No. 18-1740

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———————————————

UNITED STATES OF AMERICA,

Appellee,

v.

ERIC JAMES STULL,

Appellant.
———————————————

Appeal from Judgment of Conviction and Sentence
Entered by the United States District Court
for the Western District of Pennsylvania at
Crim. No. 16-125 (Ambrose, J.)

---

**BRIEF FOR APPELLEE UNITED STATES OF AMERICA**

---

SCOTT W. BRADY
United States Attorney

Laura Schleich Irwin
Assistant U.S. Attorney
Attorney for Appellee

700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219
Tel:    (412) 644-3500
Fax:    (412) 644-6995
Email: Laura.Irwin@usdoj.gov

# **TABLE OF CONTENTS**

JURISDICTION..............................................................................................1

ISSUE PRESENTED AND STANDARD OF REVIEW .........................................2

STATEMENT OF RELATED CASES AND PROCEEDINGS .............................4

STATEMENT PURSUANT TO FEDERAL RULE OF APPELLATE
PROCEDURE 28(e) ......................................................................................6

ARGUMENT ...............................................................................................23

I.      The District Court Issued Stull A Procedurally And Substantively
        Reasonable Sentence. ...................................................................23

        A.      The District Court Provides A Thorough And Detailed
                Explanation For Stull's Sentence. .......................................24

        B.      This Court Reviews Both Alleged Procedural And Substantive
                Sentencing Errors For Abuse Of Discretion, A Highly Deferential
                Standard.............................................................................28

        C.      Stull's Sentence Is Both Procedurally And Substantively
                Reasonable.........................................................................31

        D.      Stull's Claims Of Procedural Error Are Meritless. ............35

                1.      A Party Must Object After Announcement Of
                        Sentence In Order To Ensure Abuse Of Discretion
                        Review. ..................................................................35

                2.      Stull Cannot Sustain His Burden To Show Any
                        Procedural Error, Regardless Of the Standard Of
                        Review. ..................................................................37

        E.      Stull's Claim Of Substantive Unreasonableness Is Meritless.............50

i

CONCLUSION ........................................................................................................58

# TABLE OF AUTHORITIES

## FEDERAL CASES

Gall v. United States, 552 U.S. 38 (2007) ........................................... 24, 33, 38, 40

Kimbrough v. United States, 552 U.S. 85 (2007) ..................................................... 32

Rita v. United States, 551 U.S. 338 (2007) ...................................................... passim

United States v. Ausburn, 502 F.3d 313 (3d Cir. 2007) ................................... 48, 49

United States v. Betcher, 534 F.3d 820 (8th Cir. 2008) ...................... 46, 50, 52, 57

United States v. Booker, 543 U.S. 220 (2005) ............................................... 23, 45

United States v. Brown, 843 F.3d 74 (2d Cir. 2016) ............................................... 52

United States v. Bungar, 478 F.3d 540 (3d Cir. 2007) ........................................... 56

United States v. Carter, 564 F.3d 325 (4th Cir. 2009) ........................................... 39

United States v. Christie, 624 F.3d 558 (3d Cir. 2010) .......................................... 44

United States v. Clark, 726 F.3d 496 (3d Cir. 2013) ............................................. 30

United States v. Coates, 462 F. App'x 199 (3d Cir. 2012) ..................................... 55

United States v. Colson, 214 F. App'x 227 (3d Cir. 2007) ..................................... 45

United States v. Cooper, 437 F.3d 324 (3d Cir. 2006) ........................... 3, 28, 30, 49

United States v. Cowan, No. 11-15989, 2012 WL 5834582
   (11th Cir. Nov. 19, 2012) .................................................................................. 51

United States v. Craig, 703 F.3d 1001 (7th Cir. 2012) ........................................... 46

United States v. Curran, 638 F. App'x 149 (3d Cir. 1994) ..................................... 55

United States v. Demeyer, 665 F.3d 1374 (8th Cir. 2012) .......................................51

United States v. Dominguez Benitez, 542 U.S. 74 (2004) .............................. 37, 44

United States v. Estrada-Mederos, 784 F.3d 1086 (7th Cir. 2015) .........................39

United States v. Eversole, 487 F.3d 1024 (6th Cir. 2007).......................................45

United States v. Falgout, 325 F. App'x 775 (11th Cir. 2009) .................................51

United States v. Flores-Mejia, 759 F.3d 253 (3d Cir. 2014) ................... 2, 3, 35, 36

United States v. Fountain, 792 F.3d 310 (3d Cir. 2015).........................................39

United States v. Goff, 501 F.3d 250 (3d Cir. 2007) .................................. 34, 41, 54

United States v. Gonzalez, 110 F.3d 936 (2d Cir. 1997).........................................37

United States v. Graziotti, 619 F. App'x 980 (11th Cir. 2015) ...............................51

United States v. Grier, 475 F.3d 556 (3d Cir. 2007) ...............................................33

United States v. Grossman, 513 F.3d 592 (6th Cir. 2008).......................................40

United States v. Gunter, 462 F.3d 237 (3d Cir. 2006)............................... 23, 31, 32

United States v. Herrick, 512 F. App'x 534 (6th Cir. 2013) ...................................46

United States v. Hollis, 552 F.3d 1191 (10th Cir. 2009).........................................45

United States v. Howells, 676 F. App'x 55 (2d Cir. 2017) ........................ 46, 50, 52

United States v. Jackson, 862 F.3d 365 (3d Cir. 2017) ...........................................43

United States v. Jenkins, 333 F.3d 151 (3d Cir. 2003).............................................44

United States v. Johnson, 451 F.3d 1239 (11th Cir. 2006)......................................51

iv

United States v. Jones, 740 F.3d 127 (3d Cir. 2014) ...............................................43

United States v. Joseph, 730 F.3d 336 (3d Cir. 2013) ..........................................2, 47

United States v. Kluger, 722 F.3d 549 (3d Cir. 2013)............................................38

United States v. Kurti, 427 F.3d 159 (2d Cir. 2005) ...............................................45

United States v. Lessner, 498 F.3d 185 (3d Cir. 2007) ..........................................30

United States v. Levinson, 543 F.3d 190 (3d Cir. 2008) ........................... 28, 43, 57

United States v. Lewis, 594 F.3d 1270 (10th Cir. 2010) ........................................45

United States v. Merced, 603 F.3d 203 (3d Cir. 2010)............................. 33, 39, 49

United States v. Metzger, 411 F. App'x 1 (7th Cir. 2010) .............................. 50, 55

United States v. Okun, 453 F. App'x 364 (4th Cir. 2011)......................................54

United States v. Olhovsky, 562 F.3d 530 (3d Cir. 2009) ........................................41

United States v. Quiles, 618 F.3d 383 (3d Cir. 2010) ............................................48

United States v. Reibel, 688 F.3d 868 (7th Cir. 2012) ...........................................40

United States v. Ronquillo, 508 F.3d 744 (5th Cir. 2007)......................................45

United States v. Russell, 662 F.3d 831  (7th Cir. 2011) .................................. 48, 52

United States v. Sarras, 575 F.3d 1191 (11th Cir. 2009)............................ 34, 45, 51

United States v. Stong, 773 F.3d 920 (8th Cir. 2014) ............................................51

United States v. Thompson, 523 F.3d 806 (7th Cir. 2008)......................................45

United States v. Tomko, 562 F.3d 558 (3d Cir. 2009) .................................... passim

United States v. Torrence, 725 F. App'x 118 (3d Cir. 2018) ...................................32

United States v. Ward, 732 F.3d 175 (3d Cir. 2013) ...............................................54

United States v. Watson, 482 F.3d 269 (3d Cir. 2007)............................................54

United States v. Wise, 515 F.3d 207 (3d Cir. 2008).......................................... 29, 30

Yuan v. Att'y Gen., 642 F.3d 420 (3d Cir. 2011)....................................................52

## STATE CASES

Commonwealth v. Butler, 173 A.3d 1212 (Pa. Super. 2017).............................5, 11

Commonwealth v. Stull, 188 A.3d 591, 1208 WDA 2017, 2018
    WL 1528370 (Pa. Super. Mar. 29, 2018)............................................ 4, 5, 10, 11

Commonwealth v. Stull, Dk.No. CP-30-CR-000198-2016.......................................4

Commonwealth v. Stull, Pa. LEXIS 4785, No. 155 WAL 2018 (2018) .............5, 11

## FEDERAL STATUTES

18 U.S.C. §2151(a)(e) ............................................................................................12

18 U.S.C. §2251(a) ................................................................................................16

18 U.S.C. §2251(e) ................................................................................................16

18 U.S.C. §2252(a)(2).......................................................................................13, 17

18 U.S.C. §2252(a)(4)(B) .................................................................................13, 17

18 U.S.C. §2252(b)(2)............................................................................................17

18 U.S.C. §3231 .......................................................................................................1

18 U.S.C. §3553(a) ......................................................................................... passim

18 U.S.C. §3742(a)(1)................................................................1

18 U.S.C. §3742(g) ............................................................ 31, 32

18 U.S.C. §3584(a) ............................................................ 17, 47

18 U.S.C. §3584(b) ..............................................................17

28 U.S.C. §1291 ...................................................................1

## **OTHER STATUTES**

42 Pa.C.S. §9799.24(e)(3)...................................................5, 11

## **FEDERAL RULES**

Fed. R. App. P. 32(a)(5)......................................................59

Fed. R. App. P. 32(a)(6)......................................................59

Fed. R. App. P. 32(a)(7)......................................................59

Fed. R. App. P. 32(a)(7)(B)(iii) ...........................................59

## **UNITED STATES SENTENCING GUIDELINES**

U.S.S.G. §2G2.1...............................................................14

U.S.S.G. §2G2.1(b)(1)(A)..................................................14

U.S.S.G. §2G2.1(b)(2)(A)..................................................14

U.S.S.G. §2G2.1(b)(4) ......................................................15

U.S.S.G. §2G2.1(b)(5) ......................................................14

U.S.S.G. §2G2.2(a)(2) ......................................................15

U.S.S.G. §2G2.2(b)(2) ..................................................................15

U.S.S.G. §2G2.2(b)(3)(F) ...........................................................15

U.S.S.G. §2G2.2(b)(4) ..................................................................15

U.S.S.G. §2G2.2(b)(5) ..................................................................15

U.S.S.G. §2G2.2(b)(6) ..................................................................15

U.S.S.G. §2G2.2(b)(7)(D) ............................................................16

U.S.S.G. §3D1.2 .............................................................................14

U.S.S.G. §3D1.2(d) ........................................................................14

U.S.S.G. §3D1.3 .............................................................................16

U.S.S.G. §3D1.4 .............................................................................16

U.S.S.G. §3D1.5 .............................................................................16

U.S.S.G. §4B1.5(b) ........................................................................16

U.S.S.G. §5G1.1(a) ........................................................................46

U.S.S.G. §5G1.2 .............................................................................45

U.S.S.G. §5G1.2(d) ................................................................ passim

U.S.S.G. §5G1.3 .............................................................................24

U.S.S.G. §5G1.3(b) ................................................................ 18, 19

viii

## **JURISDICTION**

This is a direct appeal from the conviction and sentence of Appellant, Eric James Stull.  The District Court had jurisdiction over the action by virtue of 18 U.S.C. §3231.  The judgment of sentence was entered on the docket on March 30, 2018 (A19, Dk.No.75; A1, Judgment).[1]   Stull noticed a timely appeal (A19, Dk.No.78; A12, Notice of Appeal).

This Court has jurisdiction to decide the appeal pursuant to 28 U.S.C. §1291.  Stull has a right to appeal his sentence under 18 U.S.C. §3742(a)(1).

---

[1] Citations to "A" refer to the Appendix filed by Stull.  Unless otherwise indicated, the document cited is the transcript of the sentencing hearing.

## **ISSUE PRESENTED AND STANDARD OF REVIEW**

1.      Whether the District Court imposed a procedurally and substantively reasonable sentence of 338 years, 1 month, and 11 days on Stull following his conviction for 39 counts of coercing his adopted daughter from the time of her adoption at 21 months old until she was 11 to engage in sexually explicit conduct for the purpose of producing material depicting that sexual exploitation, one count of distribution of material depicting the sexual exploitation of minors, and one count of possession of material depicting minors under the age of 12 (including depictions of Stull's adopted daughter) engaging in sexually explicit conduct.

a.      Stull objected to the procedural reasonableness of his sentence on the singular ground that the District Court placed an undue and improper emphasis on one of the 18 U.S.C. §3553(a) factors, specifically the nature and characteristics of the offense (A214-16).  This specific argument, therefore, is preserved (Br.2).  See United States v. Joseph, 730 F.3d 336, 340-42 (3d Cir. 2013). Stull was not required to object to the substantive reasonableness of his sentence. See United States v. Flores-Mejia, 759 F.3d 253, 256 (3d Cir. 2014).

b.      Stull's    singular    preserved    argument    of    procedural unreasonableness is reviewed for an abuse of discretion.  See Flores-Mejia, 759 F.3d at 257-58.    His remaining—and new—arguments of procedural error are not

preserved and therefore are subject to plain error review, id. at 259, although Stull fails to acknowledge as much (Br.2). An error qualifies as "plain if it is clear or obvious, affects substantial rights, and affects the fairness, integrity or public reputation of judicial proceedings. Id. (citations & quotation marks omitted). The substantive reasonableness of a sentence is reviewed for an abuse of discretion. United States v. Cooper, 437 F.3d 324, 330, 332 (3d Cir. 2006). The burden of demonstrating both procedural and substantive unreasonableness rests with Stull. See United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (*en banc*).

## **STATEMENT OF RELATED CASES AND PROCEEDINGS**

This case has not been before this Court previously.

Stull entered an open plea of guilty in state court to charges surrounding his involvement with his adopted daughter, Minor A, specifically to 34 counts of rape of a person less than 13 years of age, 34 counts of involuntary deviate sexual intercourse with a child, 34 counts of unlawful contact with a minor, and 30 counts of corruption of a minor. Commonwealth v. Stull, 188 A.3d 591, 1208 WDA 2017, 2018 WL 1528370, at *1 (Pa. Super. Mar. 29, 2018); see also Commonwealth v. Stull, Dk.No. CP-30-CR-000198-2016. The trial court sentenced Stull to: 10 to 20 years of incarceration at each of the 34 counts of rape of a child, to be served consecutively to each other; 10 to 20 years of incarceration at each of the 34 counts of involuntary deviate sexual intercourse with a child, to be served consecutively to each other and concurrently to the periods of incarceration imposed for rape of a child; and 10 to 20 years of incarceration at each of the 34 counts of unlawful contact with a minor, to be served consecutively to each other and concurrently to the periods of incarceration imposed for rape of a child and involuntary deviate sexual intercourse with a child. Stull, 2018 WL 1528370, at *1. His total state sentence, therefore, is 340 to 640 years of imprisonment. Id.

On March 29, 2018, the Superior Court of Pennsylvania affirmed Stull's guilty plea as knowing, intelligent, and voluntary and all aspects of his sentence, save that portion requiring him to register as a sexually violent predator for life pursuant to 42 Pa.C.S. §9799.24(e)(3).  Stull, 2018 WL 1528370, at *2-7 (citing Commonwealth v. Butler, 173 A.3d 1212 (Pa. Super. 2017) (holding that 42 Pa.C.S. §9799.24(e)(3) is unconstitutional)).

Stull has filed a petition for allowance of appeal in the Pennsylvania Supreme Court, at No. 155 WAL 2018.  On September 17, 2018, the Pennsylvania Supreme Court denied the petition.  See Commonwealth v. Stull, No. 155 WAL 2018, 2018 Pa. LEXIS 4785 (2018) (*per curiam*).

Other than this, Counsel is not aware of any related case or proceeding—completed, pending, or anticipated—before this Court or any other court or agency, state or federal.

5

## STATEMENT PURSUANT TO
## FEDERAL RULE OF APPELLATE PROCEDURE 28(e)

When Stull and his wife adopted a relative's 21-month old child, the couple apparently were of different minds as to what this step meant for the child and for them.  Stull's wife, already the mother of two boys, viewed the adoption as making her family whole (A145).  Stull, however, had only depraved interests in mind:  just days after bringing Minor A into his home, Stull began to repeatedly rape and sexually assault the child.   These offenses were discovered only after the Pennsylvania State Police caught Stull downloading and sharing child pornography over the Internet.  When authorities examined Stull's collection, they discovered that Stull had documented his rapes and sexual abuses of Minor A on video and in still images.[2]

---

[2] In a singular instance, Stull acknowledges that his federal offenses resulted from his "heinous crimes against his adopted daughter which he captured on film and *videotape.*" (Br.16) (emphasis added).  Otherwise, his Brief refers solely to "images" (Br.3; Br.5; Br.7).  An image frames a silent, particular instant in time; a videotape records movement in sequence over time (typically 24 frames per second) and captures the accompanying sounds.  By largely describing his conduct as production of images, Stull grossly understates his offense conduct:  he, over the course of ten years, documented and preserved his rapes and sexual assaults of his adopted daughter moment by moment and sound by sound throughout the duration of his acts.

**A.**    <u>**Stull Warps The Privilege Of Adoption Into Sexual Self-Gratification.**</u>

Stull and his wife, Mona, adopted Minor A, the daughter of Stull's sister-in-law, when Minor A was 21 months old (PSR ¶11). Stull and Mona took this step because Minor A's biological parents had substance abuse problems (PSR ¶380). Stull's wife loved Minor A and welcomed her into the Stull home and family, which already consisted of Stull's and Mona's son Jared, approximately age 14, and Mona's son from a previous marriage, Travis Lemley, approximately age 19 (PSR ¶380; A144-45).

Minor A's adoption took place on April 28, 2006 (PSR ¶11). By at least May 8, 2006, Stull began to routinely rape and sexually assault Minor A (A99-101, Plea Colloquy; PSR ¶¶19-354; PSR ¶371). Stull continued this behavior until April 29, 2016, when Minor A was age 11 (A101; PSR ¶¶11, 13, 371, 19-354). During this 10-year period, Stull raped and sexually assaulted Minor A no less than 39 times (A101; PSR ¶¶371, 19-354). Stull accomplished this in every manner possible: he raped her vaginally, anally, and orally (A88; PSR ¶¶19-354). And, he forced Minor A to do much the same to him: he compelled her to perform oral sex on him, on both his penis and his anus (A99; PSR ¶¶19-354). In at least one instance, Stull had Minor A sniff some type of drug (A99; PSR ¶87). During the assaults, Minor A would be in pain and would tell Stull "no, stop" (A99; <u>e.g.</u>, PSR ¶53).

7

**B.    Stull's Sharing Of Child Pornography Over The Internet Brings Him To The Attention Of State Authorities And Exposes His Collection Of Videos And Still Photographs Of His Abuse Of Minor A.**

While conducting an undercover investigation of the sharing of child pornography over the Internet, Corporal Goodyear of the Pennsylvania State Police located a computer sharing child pornography on the Bit-Torrent file sharing network (A98, Plea Colloquy; PSR ¶8).  Corporal Goodyear downloaded a video file directly from the computer user; this video depicted a prepubescent girl approximately 9 years of age, blindfolded and bound at the wrists and ankles, engaging in sexually explicit conduct, including a dog licking the victim's vaginal area and the victim performing oral sex on an adult male's penis (A98; PSR ¶351).

Authorities next traced the IP address assigned to the computer sharing the child pornography to Stull (A99, Plea Colloquy; PSR ¶9).  On April 29, 2016, the Pennsylvania State Police Computer Crimes Unit executed a search warrant at Stull's residence (A99; PSR ¶10).

During the search, authorities found a hard drive containing a folder labeled "trade," into which Stull had placed 39 videos and 106 still images he had made documenting his rapes and sexual assaults of Minor A:  he captured himself raping and sexually assaulting Minor A by orally, anally and vaginally penetrating her and

by having her perform similar acts on him (A99-100; PSR ¶¶10, 19-354).[3]    Stull

began to preserve his acts to film at the outset of Minor A's entry into his home,

when she was only 21 months old (A98-102; PSR ¶¶11,13).  Stull continued to do

so over the course of her life up to the time of the search; by that time, Minor A was

11 years old (A98-102; PSR ¶¶13,20).

The videos captured not only Stull's conduct, but also Minor A's responses to

his acts (A100).  In at least one of the videos, she mouths the word "ow" and appears

to be in pain (PSR ¶¶53).  In at least one other video, Minor A says "no, stop" and

appears to be in pain (A100; PSR ¶53).

Minor A disclosed during an interview that Stull made her do the acts

preserved on film and stored on his computer's hard drive—that he touched her

genitalia (including with his mouth) and made him touch his genitalia (PSR ¶10).

Minor A also disclosed that Stull had both photographed her and made videos of her

when she was not clothed (PSR ¶10).

---

[3] Stull, notably, makes no reference to this folder, but instead avers that "[t]here was no evidence that the depictions of child pornography produced by Mr. Stull and involving his adopted daughter were posted on the internet or otherwise shared. (App.91)." (Br.3).  It is true that authorities were unable to determine whether Stull had shared this material over the Internet.  Nonetheless, Stull's blanket statement is somewhat disingenuous given the name he selected and attached to this folder (A181-82; PSR ¶12).

**C.**    **Stull Pleads Guilty To State Charges Of Rape And Sexual Assault.**

State authorities charged Stull with 34 counts of rape of a person less than 13 years of age, 34 counts of involuntary deviate sexual intercourse with a child, 34 counts of unlawful contact with a minor, and 30 counts of corruption of a minor. Stull, 2018 WL 1528370, at *1 (PSR ¶371). Although offered a plea of 20 to 40 years of incarceration, Stull decided to enter an open guilty plea to all of the charges against him. Stull, 2018 WL 1528370, at *1.

He was sentenced to: 10 to 20 years of incarceration at each of the 34 counts of rape of a child, to be served consecutively to each other; 10 to 20 years of incarceration at each of the 34 counts of involuntary deviate sexual intercourse with a child, to be served consecutively to each other and concurrently to the periods of incarceration imposed for rape of a child; and 10 to 20 years of incarceration at each of the 34 counts of unlawful contact with a minor, to be served consecutively to each other and concurrently to the periods of incarceration imposed for rape of a child and involuntary deviate sexual intercourse with a child. Id. (PSR ¶371). This was an aggregate sentence of 340 to 640 years of imprisonment. Stull, 2018 WL 1528370, at *1.

On March 29, 2018, the Superior Court of Pennsylvania rejected Stull's request for reinstatement of the plea offer on the ground that his open guilty plea

10

was not made knowingly, intelligently, and voluntarily. Id. at *1-3. As to his sentence, the Superior Court rejected Stull's contentions that: the imposition of consecutive sentences for an aggregate sentence of 340 to 680 years of incarceration was excessive because "[i]t amounts to a life sentence many times over[;]"; in arriving at the sentence, the trial court impermissibly relied on the terms of the plea agreement he rejected; the sentence was flawed because the trial court improperly disregarded Stull's "mental health and need for rehabilitation[;]" and the sentence amounted to cruel and unusual punishment. Id. at *3-6. The Superior Court, however, agreed with Stull that the requirement that he register as a sexually violent predator for life pursuant to 42 Pa.C.S. §9799.24(e)(3) was unconstitutional. Id. at *7 (citing Commonwealth v. Butler, 173 A.3d 1212 (Pa. Super. 2017) (holding that 42 Pa.C.S. §9799.24(e)(3) is unconstitutional)).

Stull has filed a petition for allowance of appeal in the Pennsylvania Supreme Court, 155 WAL 2018. On September 17, 2018, the Pennsylvania Supreme Court denied the petition. See Commonwealth v. Stull, No. 155 WAL 2018, 2018 Pa. LEXIS 4785 (2018) (*per curiam*).

**D.    <u>After A Federal Indictment, Stull Enters An Open Plea Of Guilty.</u>**

On June 7, 2016, a federal grand jury seated in the Western District of Pennsylvania returned a 41-count indictment against Stull (A21-63).[4]  Counts One through Thirty-Nine, each of which paralleled the dates of Stull's rapes and sexual assaults of Minor A, charged that on each respective date, Stull "attempted to and did employ, use, persuade, induce, entice, or coerce" a female child victim, to engage in sexually explicit conduct for the purpose of producing material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. §§2151(a),(e):

| | |
|---|---|
| Count One: | April 3, 2016 |
| Count Two: | December 25, 2015 |
| Count Three: | December 1, 2015 |
| Count Four: | October 6, 2015 |
| Count Five: | January 4, 2015 |
| Count Six: | November 4, 2014 |
| Count Seven: | March 9, 2014 |
| Count Eight: | December 23, 2013 |
| Count Nine: | December 22, 2013 |
| Count Ten: | December 3, 2013 |
| Count Eleven: | November 2, 2013 |
| Count Twelve: | September 21, 2013 |
| Count Thirteen: | September 15, 2013 |
| Count Fourteen: | July 11-12, 2013 |
| Count Fifteen: | July 9, 2013 |

---

[4] The Commonwealth also charged Stull with two counts of photographing, filming, depicting sex acts on a computer; two counts of disseminating photographs or film of sex act with a child; two counts of child pornography; two counts of criminal use of communication facility; and two counts of disseminating explicit sexual material via electronic communication (PSR ¶375).  These charges were nolle-prossed due to the instant federal matter (PSR ¶375).

Count Sixteen:           June 4, 2013
Count Seventeen:         March 17, 2013
Count Eighteen:          January 26, 2013
Count Nineteen:          December 1-2, 2012
Count Twenty:            September 26, 2012
Count Twenty-One:        April 13, 2012
Count Twenty-Two:        March 31, 2012
Count Twenty-Three:      March 29, 2012
Count Twenty-Four:       November 6, 2011
Count Twenty-Five:       September 24, 2011
Count Twenty-Six:        September 17, 2011
Count Twenty-Seven:      May 3, 2011
Count Twenty-Eight:      March 20, 2011
Count Twenty-Nine:       February 19, 2011
Count Thirty:            November 17, 2010
Count Thirty-One:        November 15, 2010
Count Thirty-Two:        October 15, 2010
Count Thirty-Three:      June 27, 2010
Count Thirty-Four:       May 9, 2010
Count Thirty-Five:       February 11, 2010
Count Thirty-Six:        January 31, 2010
Count Thirty-Seven:      October 17, 2009
Count Thirty-Eight:      January 15, 2008
Count Thirty-Nine:       May 8, 2006

(A21-59, Indictment). Count Forty charged distribution of material depicting the

sexual exploitation of minors, in violation of 18 U.S.C. §2252(a)(2), on July 21,

2015 (A61). This Count pertained to Stull's distribution of child pornography

discovered by Trooper Goodyear and which involved victims other than Minor A

(PSR ¶18). Count Forty-One alleged that Stull possessed material depicting

prepubescent minors and minors who have not attained 12 years of age engaging in

sexually explicit conduct, in violation of 18 U.S.C. §2252(a)(4)(B) on April 29, 2016

13

(A61).  This count pertained to child pornography found on Stull's computer on the date of the search depicting Minor A, as well as other children (PSR ¶18).  Stull voluntarily, knowingly, and intelligently entered an open plea of guilty to each count of the indictment (A65-106, Plea Colloquy).

### E.    Under The Guidelines, Stull's Total Offense Level Is 51 And His Criminal History Is Category I.

Stull's Pre-Sentence Report explained that Counts One through Thirty-Nine could not be grouped because, even though the victim was the same in each count, each episode was a separate and distinct harm having occurred on different occasions.  See U.S.S.G. §3D1.2 (PSR ¶18).  Counts Forty and Forty-One involved other minor victims and therefore could be grouped pursuant to U.S.S.G. §3D1.2(d) (PSR ¶18).

For Counts One through Thirty-Nine, Stull was assigned a base offense level of 32, see U.S.S.G. §2G2.1, and specific offense characteristics were applied to each Count (PSR ¶¶19-354).  These specific offense characteristics ranged from an enhancement of four levels because Minor A was under the age of 12, see U.S.S.G. §2G2.1(b)(1)(A), an enhancement of two levels because Stull was the parent of Minor A, see U.S.S.G. §2G2.1(b)(5), an enhancement of two levels because the offense involved the commission of a sexual act or contact, see U.S.S.G. §2G2.1(b)(2)(A), to an enhancement of four levels because the offense involved

material portraying (A) sadistic or masochistic conduct or other depictions of violence; or (B) an infant or toddler, see U.S.S.G. §2G2.1(b)(4) (PSR ¶¶19-354). The highest adjusted offense level from application of these Guidelines was 44 (PSR ¶359).

The base offense level for Counts Forty and Forty-One, which were grouped, was 22 pursuant to U.S.S.G. §2G2.2(a)(2) (PSR ¶348). Two levels were added under U.S.S.G. §2G2.2(b)(2) because Stull possessed images and videos of minors, including Minor A, who had not attained the age of 12 (PSR ¶349). Two levels were added pursuant to U.S.S.G. §2G2.2(b)(3)(F) due to Stull's use on July 21, 2015 of a peer-to-peer file sharing network to distribute a video consisting of child pornography to Corporal Goodyear (PSR ¶350). Pursuant to U.S.S.G. §2G2.2(b)(4), four levels were added because Stull's July 21, 2015 distribution depicted a prepubescent female who was blindfolded and bound at the wrists and ankles engaging in sexually explicit conduct, including a dog licking the victim's vaginal area and the victim performing oral sex on an adult male's penis (PSR ¶351).

Because Stull engaged in a pattern of activity, see U.S.S.G. §2G2.2(b)(5), five levels were added (PSR ¶352). Stull's offense involved use of a computer, and therefore two levels were added, see U.S.S.G. §2G2.2(b)(6) (PSR ¶353). Pursuant

to U.S.S.G. §2G2.2(b)(7)(D), five levels were added based on the number of images involved in Stull's offense (PSR ¶354).

Application of the multiple count adjustment revealed that the highest of the adjusted offense levels was 44 (PSR ¶359-60). See U.S.S.G. §3D1.3. To this, five levels were added, resulting in an a combined adjusted offense level of 49 (PSR ¶¶361-62). See U.S.S.G. §§3D1.4., 3D1.5.

Chapter Four of the Sentencing Guidelines, specifically U.S.S.G. §4B1.5(b), required the addition of five more levels because Stull's offense was a covered sex crime and because he engaged in a pattern of activity involving prohibited sexual conduct with a minor on at least two separate occasions (PSR ¶363). Stull received a two-level reduction for acceptance of responsibility (PSR ¶364; A112-13).[5] His total offense level of 51 exceeded the maximum offense level of 43, and so his level was reduced to 43. See Chapter 5, Part A (PSR ¶365; A114).

Stull's criminal history score was zero (PSR ¶372). This yielded a criminal history category of I (PSR ¶372; A114). Taken with his total offense level of 43, Stull's advisory Guidelines sentence was life imprisonment (PSR ¶392; A114).

---

[5] At sentencing, the parties recognized that Stull should have received one additional point for acceptance of responsibility (A112-13). Any modification of his PSR to reflect such a change to his Guidelines calculation would not have changed his total offense level because it was far in excess of 43 (A112-13).

At Counts One through Thirty-Nine, Stull faced a statutory minimum term of 15 years and a maximum term of 30 years of imprisonment per count (PSR ¶391). See 18 U.S.C. §§2251(a), (e). At Count Forty, the minimum term of imprisonment was 5 years, with a maximum term of 20 years of imprisonment (PSR ¶391). See 18 U.S.C. §§2252(a)(2), 2252(b)(1). At Count Forty-One, Stull faced a maximum term of imprisonment of 20 years, see 18 U.S.C. §§2252(a)(4)(B), 2252(b)(2) (PSR ¶391). Pursuant to 18 U.S.C. §§3584(a), (b), the District Court had discretion to determine if Stull's federal sentence would run concurrently with or consecutive to, the sentence imposed by the Commonwealth (PSR ¶391). Because Stull's advisory Guideline Range of life imprisonment exceeded the highest statutory maximum sentence at each count, U.S.S.G. §5G1.2(d) was applied: because the sentence on the count carrying highest statutory maximum sentence was less than the total punishment of life, then the sentence on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment (PSR ¶392).

The PSR also explained that Stull's conduct underlying his state-court convictions "represent[ed] relevant conduct to the instant federal offense" and since that conduct "was taken into account in the determination of the offense level for the

17

instant offense," Stull's sentence should be adjusted, pursuant to U.S.S.G. §5G1.3(b)

(PSR ¶393).   That Guideline provides:

> if the term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (relevant conduct) and that was the basis for an increase in the offense level of the instant offense under Chapter Two (offense conduct) or Chapter Three (adjustments), the sentence for the instant offense shall be imposed as follows: (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment . . . and (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. §5G1.3(b).  Neither party objected to the PSR (A111-12).

### F.    After Hearing From Three Of Minor A's Family Members, The District Court Sentences Stull.

At sentencing, the District Court adopted the PSR (A111-14).  Accordingly,

Stull's total offense level was 43; his criminal history category was I; and his

advisory Guidelines Range was life imprisonment (A114).

Three family members then addressed the District Court:  Jared Stull (A116-

31) and Travis Lemley (A131-42), both adults by this juncture, and Stull's wife,

Mona (A142-65).  After argument by both parties (A166-90) and allocution by Stull

(A190-99), the District Court, who agreed that the advisory Guidelines Range was

life imprisonment (A114), sentenced Stull to 20 years' imprisonment at each of

Counts One through Seventeen, to be served consecutively, and 15 years at each of

18

Counts Eighteen through Thirty-Nine and 20 years at each of Counts Forty and Forty One, to be served concurrently to each other and to Counts One through Seventeen (A205). This amounted to a total term of 338 years, one month, 11 days, all to be served concurrently to Stull's state sentence (A205). The District Court considered this sentence as within the advisory Guidelines Range of life imprisonment (see Statement of Reasons p.2 (sealed)). The sentence was not a departure nor was it a variance (Statement of Reasons pp.2-3 (sealed)) and it was "imposed pursuant to the provisions of U.S.S.G. §5G1.3(b)" (A205).

This timely appeal followed (A12, Notice of Appeal). Stull challenges only his sentence, but as demonstrated, he is unable to carry his burden to show any error whatsoever.

## SUMMARY OF ARGUMENT

In this sentencing appeal, Stull challenges as both procedurally and substantively unreasonable his Guideline sentence of 20 years' imprisonment at each of 17 counts of conviction for production of child pornography, 15 years at each of 22 counts of conviction for production of child pornography, and 20 years each at one count of conviction for distribution of child pornography and one count of conviction for possession of child pornography, to be served concurrently to each other and to the term for the 17 counts of conviction for production of child pornography (A205). This amounts to a total term of 338 years, one month, 11 days, all to be served concurrently to a state sentence Stull is serving (A205).

That state sentence, a term of 340 to 680 years, resulted from Stull's guilty plea to 34 counts of rape of a person less than 13 years of age, 34 counts of involuntary deviate sexual intercourse with a child, 34 counts of unlawful contact with a minor, and 30 counts of corruption of a minor.

The minor victim in all of these offenses (save the single count of production of child pornography) was Stull's adopted daughter. Stull adopted Minor A when she was 21 months old. Within a week of having her in his home, Stull began to rape and sexually assault her, all the while preserving his acts to videotape and still photographs. For the next 10 years, Stull repeatedly raped Minor A vaginally,

anally, and orally and he forced Minor A to perform oral sex on him, on both his penis and his anus.

Stull's conduct was discovered by happenstance:  a Pennsylvania State Police Trooper discovered Stull distributing child pornography over the Internet.  When authorities executed a search warrant at Stull's residence, they discovered not only the child pornography that he had distributed, but also the videos and images of Stull raping and sexually assaulting Minor A.  She was 11 years old by this point.

Stull entered an open guilty plea to a 41-count indictment.  His advisory Guidelines Range was life.

At sentencing, the District Court issued a sentence that was both procedurally and substantively reasonable:  the District Court undertook an individualized assessment of Stull and his conduct in light of the factors of 18 U.S.C. §3553(a). The court then arrived at a sentence that, although severe, is appropriate, rests on reasons that are logical and consistent with §3553(a) factors, and is fully supported by the record.

Stull's arguments of procedural error (only one of which is preserved) fail to expose any error (plain or otherwise) by the District Court.  He primarily complains that the District Court placed too great an emphasis on the nature and circumstances of his offense, but this argument is incorrect.  The record establishes full and fair

consideration of the relevant §3553(a) factors by the District Court, not just the nature and circumstances of the offense.

Stull's claims of substantive unreasonableness are equally meritless. He primarily argues that his sentence is too great because it is longer than sentences routinely imposed on murderers, and moreover, his offense left Minor A alive and, by reports of her family at sentencing, she "has a bright future" (Br.28). Apart from signaling a failure to accept responsibility for his actions, Stull's argument does not go far. Neither criminal statutes nor the Guidelines provide for sentences based solely on the nature of the offense. Instead, a robust, individualized analysis is required. That is precisely what took place at Stull's sentencing.

Thus, while Stull's sentence is undoubtedly severe and even if the Court, sitting as a sentencing court, would have imposed a different sentence, affirmance is nonetheless required. This is because the abuse of discretion standard applicable to review for substantive reasonableness requires broad and meaningful deference to the sentencing court. And, considering the totality of the circumstances of this case, any reasonable sentencing court would have imposed the same sentence on Stull for the reasons provided by the District Court.

## **ARGUMENT**

**I.      The District Court Issued Stull A Procedurally And Substantively Reasonable Sentence.**

Stull maintains that this Court should vacate his sentence and remand for re-sentencing because the District Court abused its discretion as both a matter of procedure and substance at the third step of United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006).[6]  His only preserved claim of procedural error is that the District Court improperly elevated its consideration of the nature and circumstances of the offense above all other statutory factors.  Stull did not object to the bulk of his claimed procedural errors, which range from a claim of lack of an individualized sentence to the averment that the District Court simply deferred to the state court's determination of an appropriate sentence, thus subjecting them only to plain error review.  As to substantive error, Stull contends that his sentence is greater than necessary, is impossible to serve, and improperly exceeds sentences routinely imposed in this Circuit for murder.

---

[6]Gunter, 462 F.3d at 247, established the Third Circuit's three-step sentencing process post United States v. Booker, 543 U.S. 220 (2005).  First, a court must calculate a defendant's sentence under the Guidelines; second, the court must rule on departure motions; and third, the court is required to exercise its discretion in setting the sentence by considering the factors applicable under 18 U.S.C. §3553(a).

23

Stull's arguments are meritless.  Under any standard, Stull's contentions lack foundation in the record or the law.  The District Court, occupying a "'superior position to find facts and judge their import under §3553(a) in the individual case,'" and to "'gain[ ] insights not conveyed by the record[,]'" undertook a thorough and meaningful analysis of the §3553(a) factors as applied to Stull and his arguments. Tomko, 562 F.3d at 560-61 (quoting Gall v. United States, 552 U.S. 38, 51-52 (2007)).  Stull's sentence is undeniably severe, but it its legal:  it is a function of the totality of the circumstances presented by his unique and extraordinary case.  These points, explained below, establish that the Court should affirm Stull's sentence as procedurally and substantively reasonable.

## A. The District Court Provides A Thorough And Detailed Explanation For Stull's Sentence.

At the outset of sentencing, the District Court adopted the PSR and announced that Stull's total offense level was 43, his criminal history category was I, and that the resulting "advisory guideline range applic[able] to this case" was "a custodial range [of] life" (A113-14).  Both parties agreed to these points, including that the advisory Guidelines Range was life imprisonment (A114).

Jared Stull, Travis Lemley, and Mona Stull provided statements to the District Court (A115-65).  Stull then sought a sentence of "less than 30 years approaching

24

20 years with the adjustment [pursuant to §5G1.3] for the 23 months he had already served on his state sentence," to run concurrently with his state sentence (A179).

On the ground that the outcome of Stull's state-court case was uncertain due to his pending appeal in state-court, the Government sought a term of life imprisonment (A180; A184-85).    Reviewing Stull's conduct, the prosecutor explained that the videos depict Minor A:

> starting out as a baby, as an innocent baby, who, ultimately, over the course of all these ten years, resigns herself to the conduct . . . . She can't stop it, and she knows no one will help her.  She was a helpless child who depended on the defendant for her safety and security, and didn't get it.

(A182).  In sum, the prosecutor argued, Minor A was "irreparably hurt physically and psychologically time and again for a period of ten years for the defendant's pure sexual gratification.  This little girl has been through the worst kind of hell" (A183).

Stull then allocuted (A190-95).  He described Minor A as "grounding me, she was saving me" (A196).  He also described the litany of experiences in her life (such as going to prom) that he would miss out on due to his incarceration (A198).

After adopting the PSR, the District Court began pronouncement of sentence by noting that the goal of sentencing is to "impose a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.  And the law requires that I consider a number of factors in doing that" (A200).

The District Court started with consideration, "first and foremost" of the nature and circumstances of the offense (A200). In this respect, Stull's offense qualified as "an entirely heinous crime, . . . this is the worst of these types of cases" to have come before the court, a point that was "foremost" in the court's mind (A200). The District Court twice admitted that "it's hard to know what to say to" Stull because he "committed indefensible conduct" (A202-03).

The District Court considered Stull's history and characteristics (A200-03). The District Court "under[stood] that [Stull had] been through a lot," but "did have a fairly normal childhood" and maintained contact with his parents (A201). The District Court acknowledged Stull's "claim of some sexual abuse when [he was] in third or fourth grade" and past issues with depression and alcohol abuse (A201-02).

While describing his time in the armed forces as "commendable" (A201), the District Court ruled that "[i]n spite of [his] military service and [his] sacrifices there, I feel that your conduct with your daughter far outweighs any benefits that I might think of that you are entitled to because of military service" (A203). The District Court did not:

> give short shrift to the claim of PTSD, but I kind of agree with [defense counsel], who says that that's really no excuse, and it can't be, it can't be what happens as a result of posttraumatic stress disorder.

(A201-02). Stull's wife, according to the District Court was totally devoted" to him and functioned as "the rock in house" and "[held] everything together, working steadily as a nurse" (A202-03). Stull worked only intermittently (A202).

The District Court turned to the need for the sentence to reflect the seriousness of this offense, explaining that the sentence would fulfill this purpose:

> You have already been given some heavy, heavy time, and we're on a parallel course here, and everything that we do here today may be moot, it may or may not, that's something that I don't know and I can't really count on.

(A203). Speaking to deterrence, the District Court explained that the sentence would deter Stull "from doing things like this in the future" because "[t]here's no way that" Stull would "be able to do things like this, because [he would not] be in a situation which would even allow that" (A203-04).

As to protection of the public, the District Court stated: that the public, and Stull's "family particularly, need to be protected from" him "to make them continue to feel safe as they feel now" (A204). Moving to correctional treatment, the District Court noted that such services would be available to Stull in the federal system, although it was unlikely that he would be housed in a federal prison "for a long time" (A204). The District Court concluded by discussing just punishment:

> These are offenses which scream for just punishment, and today, I'm imposing what may seem to you to be outrageous, but when I hear what your family says, when I hear what the government's attorney says,

when I look at the trooper, I think a parallel sentence to what you've received in state court is sufficient but not greater than necessary to achieve the goals of sentencing.

(A204-05). Relying on "all of those reasons," the District Court announced Stull's sentence of 338 years, one month, 11 days, to be served concurrently to Stull's state sentence (A205).

### B. This Court Reviews Both Alleged Procedural And Substantive Sentencing Errors For Abuse Of Discretion, A Highly Deferential Standard.

This Court's "responsibility on appellate review of a criminal sentence is limited yet important: [the Court must] ensure that a substantively reasonable sentence has been imposed in a procedurally fair way." United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008). The party challenging the sentence has the burden of demonstrating unreasonableness, whether the asserted error presents a question of procedure or substance. Tomko, 562 F.3d at 567.

This Court gives due deference to a district court's judgment by applying the abuse of discretion standard to both inquiries. Cooper, 437 F.3d at 330, 332. In Tomko, 562 F.3d at 565-67, this Court made plain the contours of this standard of review.

First, Tomko explained, "deferential review is used when the matter under review was decided by someone who is thought to have a better vantage point than

28

we on the Court of Appeals to assess the matter." Id. (citation & quotation omitted).

As Tomko, put it, this means that:

> [i]n the dialogue between the appellate judges and the trial judge, the former often would seem to be saying: 'You were there. We do not think we would have done what you did, but we were not present and we may be unaware of significant matters, for the record does not adequately convey to us all that went on at the trial. Therefore, we defer to you.'

Id. at 565 (quotation & citation omitted).

The second underlying principle, according to Tomko, 562 F.3d at 565, is that "courts of appeals apply the abuse of discretion standard to fact bound issues that are ill suited for appellate rule making." This rests on the "impracticability of formulating a rule of decision for" sentences because "they involve multifarious, fleeting, special, narrow facts that utterly resist generalization at least, for the time being." Id. (citation & quotations omitted). Thus, the abuse of discretion standard for appellate review of sentences is extremely deferential. E.g., id. at 565-66.

When an alleged procedural error is at issue, "the amount of deference" given by the Court "depend[s] on the type of procedural error asserted on appeal[.]" United States v. Wise, 515 F.3d 207, 217 (3d Cir. 2008). If the asserted procedural error is "purely factual," appellate "review is highly deferential" and an abuse of discretion arises "only if the district court's findings are clearly erroneous." Id. When the asserted procedural error is purely legal, this Court does not defer to a district court.

Id.  This distinction is important, particularly because Stull asserts the incorrect blanket statement that "this Court gives no deference to district courts when reviewing claims of procedural error" (Br.2 (citing Wise, 515 F.3d at 217)).

In reviewing substantive reasonableness, this Court affords a district court's final sentence "great deference." United States v. Lessner, 498 F.3d 185, 204 (3d Cir. 2007).  Therefore, the Court will not reverse simply because it "would have imposed a different sentence." Wise, 515 F.3d at 218.  Instead, this Court will affirm "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." Tomko, 562 F.3d at 568.  Put another way, this Court will affirm a sentence as substantively reasonable as long as the sentence falls within the broad range of possible sentences that can be considered reasonable in light of the relevant 18 U.S.C. §3553(a) factors. Tomko, 562 F.3d at 568; Wise, 515 F.3d at 218.  The Court will ask "whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." United States v. Clark, 726 F.3d 496, 500 (3d Cir. 2013) (citation & quotation omitted).  This standard imposes a "heavy burden" on an appellant. Id. at 500 (citations omitted).  This is because, as this Court observed in Cooper, 437 F.3d at 332 n.11, "reasonableness is a range, not a point." (citation & quotation omitted).

30

### C. **Stull's Sentence Is Both Procedurally And Substantively Reasonable.**

Step Three of <u>Gunter</u>, 462 F.3d 237, requires a sentencing court to consider the factors applicable under 18 U.S.C. §3553(a).   <u>Id.</u> at 247 (internal citations, quotations & alterations omitted); <u>Tomko</u>, 562 F.3d at 577 n.16.   The §3553(a) factors are:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed—

    (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)   to afford adequate deterrence to criminal conduct;

    (C)   to protect the public from further crimes of the defendant; and

    (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for—

    (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

        (i)   issued by the Sentencing Commission . . . , subject to any amendments made to such guidelines by act of Congress . . . ; and

        (ii)    that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

31

(5) any pertinent policy statement—

    (A)    issued by the Sentencing Commission . . . , subject to any amendments made to such policy statement by act of Congress . . . ;

    (B)    that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).  The sentencing court need only consider the §3553(a) factors that are relevant in a particular case.  Gunter, 462 F.3d at 247.

Here, the District Court, with thorough consideration and discussion, applied the relevant §3553(a) factors to Stull.  Going through the factors almost seriatim, the District Court addressed the nature and circumstances of the offense (A200), Stull's history and characteristics (A200-03), the seriousness of the offense (A203), deterrence (A203-04), protection of the public (A204), providing Stull with needed training, care, and treatment (A204), and just punishment (A204-05).  See United States v. Torrence, 725 F. App'x 118, 123-24 (3d Cir. 2018) (rejecting argument that district court improperly focused only on defendant's conduct because court discussed multiple other §3553(a) factors).  Consequently, the District Court "committed no procedural error."  Kimbrough v. United States, 552 U.S. 85, 111

32

(2007) (affirming sentence because "[t]he District Court began by properly calculating and considering the advisory Guidelines range. It then addressed the relevant §3553(a) factors."). See also Gall, 552 U.S. at 53 (". . . the District Judge committed no significant procedural error. He correctly calculated the applicable Guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered all of the §3553(a) factors, and thoroughly documented his reasoning.").

Stull's sentence, although unquestionably lengthy, is nonetheless substantively reasonable. A sentencing decision is substantively reasonable if "the record as a whole reflects rational and meaningful consideration of the factors enumerated in §3553(a)." United States v. Merced, 603 F.3d 203, 214 (3d Cir. 2010) (quoting United States v. Grier, 475 F.3d 556, 571 (3d Cir. 2007) (en banc)). That is precisely what occurred here. Giving "due deference to the district court's determination that the §3553(a) factors, on a whole, justify the sentence" and considering "the totality of the circumstances"—the offense conduct, the age and situation of the victim, Stull's relationship to the victim, the relevant conduct underlying the videos and photographs, the time span of the illegal conduct, and the type and content of the videos and images—Stull's sentence is no doubt substantively firm. See Tomko, 562 F.3d at 567-568. Stull has not satisfied his

33

burden to show that no reasonable sentencing court would have imposed the same sentence on Stull for the reasons the district court provided; instead, the opposite is true—any reasonable sentencing court would have imposed the same sentence on Stull for the reasons provided by the District Court.  See id. at 568.

The District Court described Stull's case as "extremely unique" (A186), "an entirely heinous crime, that this is the worst of these types of cases I have seen . . . . this is a crime that is up at the top of the list of this genre of crimes" (A200).  The District Court admitted that the sentence "may seem . . . outrageous" but it was nonetheless the right sentence:

> but when I hear what your family says, when I hear what the government's attorney says, when I look at the trooper, I think a parallel sentence to what you've received in state court is sufficient but not greater than necessary to achieve the goals of sentencing

(A205).[7]  Stull's sentence, therefore, is substantively reasonable and this Court should affirm it.

---

[7] The true nature of Stull's instant offenses of conviction, see United States v. Sarras, 575 F.3d 1191, 1220 (11th Cir. 2009) ("Child sex crimes are among the most egregious and despicable of societal and criminal offenses."), and Congress's intent that such offenses "be treated severely," is well-established.  See e.g., United States v. Goff, 501 F.3d 250, 258-29 & n.13 (3d Cir. 2007).

34

### D. **Stull's Claims Of Procedural Error Are Meritless.**

Despite the firmness of his sentence, Stull nonetheless raises claims of procedural error. Any analysis of these claims necessarily must begin with identifying which claims he has, and has not, preserved. Once preservation is clarified, analysis of Stull's specific arguments reveals each as without foundation in fact or the law, and thus his sentence is procedurally firm.

### 1. **A Party Must Object After Announcement Of Sentence In Order To Ensure Abuse Of Discretion Review.**

As this Court has clarified, a defendant must object after pronouncement of sentence to any perceived procedural errors in order to ensure review for an abuse of discretion. Flores-Mejia, 759 F.3d at 257-58. Here, after pronouncement of sentence, Stull raised his singular procedural objection:

> . . . , and the one factor that the Court mentioned a couple different times as foremost of the Court's considerations was the nature and circumstances of the offense. Under 3553(a), I don't believe that's an accurate recitation of a rating of factors, that one doesn't have any priority over the others. I agree with the Court's recitation of gravity, but those other factors, whether it's deterrence, reflection of seriousness of the offense, we're asking that the Court note for the record that I identify it as a procedural unreasonableness factor, the reliance on nature and circumstances of the offense as a foremost factor.

(A215-16). In response, the District Court stated that all of the §3553(a) factors had been addressed, but that Stull's objection was preserved (A216).

35

The record therefore establishes that despite Stull's claim to the contrary (Br.13), he preserved only the procedural argument that the District Court placed undue emphasis on one of the §3553(a) factors, specifically the nature and circumstances of the offense (A215-16).  See Flores-Mejia, 759 F.3d at 256.  His remaining arguments of procedural error—that the District Court failed to undertake an individualized assessment based on the facts of the case (Br.21); that the District Court simply capitulated to the alleged request of the Government to impose the same sentence as that ordered by the state court (and thus also improperly deferred to the state court's determination of an appropriate sentence) (e.g., Br.21); that the District Court violated U.S.S.G. §5G1.2(d) (Br.22-23; Br.28); that the District Court failed to explain why a term of 20 years of incarceration (the maximum sentence for one count of distribution or possession of child pornography) or a sentence of 30 years (the maximum sentence for one count of production of child pornography) would be insufficient (Br.21; Br.26); and that the District Court should have said more in order to justify the length of his sentence (Br.26)—are unpreserved and are subject to plain error review.  See Flores-Mejia, 759 F.3d at 259.

Satisfaction of all four prongs of plain error review—meeting the high burden of demonstrating an error that is clear or obvious, that affects substantial rights, and that seriously affects the fairness, integrity or public reputation of judicial

36

proceedings—is difficult, "as it should be." United States v. Dominguez Benitez,

542 U.S. 74, 83 n.9 (2004). The Court of Appeals for the Second Circuit has

explained in clear terms why this is so:

> Therefore, an objection not taken is an oversight by a defendant that cannot be easily overlooked. It is an impediment to proper trial administration and, when it occurs, it is a powerful indicator that the party who now complains so strenuously did not believe then there was any error or, if he did, that it was inconsequential or that bringing it to the court's attention would actually hurt his case.

United States v. Gonzalez, 110 F.3d 936, 945 (2d Cir. 1997).

### 2. Stull Cannot Sustain His Burden To Show Any Procedural Error, Regardless Of the Standard Of Review.

Neither Stull's preserved nor unpreserved arguments of procedural

unreasonableness amount to reversible error. To the contrary, the District Court

issued him a procedurally reasonable sentence, which this Court should affirm.

### a. The District Court Did Not Abuse Its Discretion By Considering "First And Foremost" The Nature And Circumstances Of The Offense.

Stull's only preserved claim of procedural error—that by stating "first and

foremost" it would consider the nature and circumstances of his offense (A200), the

District Court placed undue and improper weight on this factor, thus violating the

court's obligation to consider all of the §3553(a) factors and to conduct an

individualized consideration of each of the §3553(a) factors (Br.19-21)—does not

37

withstand abuse of discretion review.    Instead of improperly isolating one §3553(a)

factor and an absence of an individualized assessment, the District Court undertook

the necessary and required particularized and thorough analysis of the relevant

§3553(a) factors as applied to Stull.  See United States v. Kluger, 722 F.3d 549, 567-

68 (3d Cir. 2013) (rejecting argument that district court considered some §3553(a)

factors "to the exclusion of others" because court engaged in a through discussion

of the relevant factors).

The Supreme Court, see Gall, 552 U.S. at 49-50, and this Court have directed

that an individualized assessment means an analysis of the defendant's conduct and

circumstances, in contrast to a general consideration of the crime, the advisory

Guidelines Range, or the generic factors that go into the Sentencing Guidelines.

Sitting en banc, this Court explained:

> We must be mindful that the Sentencing Guidelines 'reflect a rough
> approximation of sentences that might achieve §3553(a)'s objectives,'
> and the Sentencing Commission has carried out those objectives at
> 'wholesale.'  The sentencing judge, in contrast, carries out the §3553(a)
> objectives at 'retail,' because '[t]he sentencing judge has access to, and
> greater familiarity with, the individual case and the individual
> defendant before him than the Commission or the appeals court.'  Here,
> the record demonstrates the District Court's thoughtful attempt to tailor
> the off-the-rack Guidelines recommendations into a sentence that fits
> Tomko personally.  Where it believed the Guidelines recommendations
> too large or too small—for example, in the advisory ranges for
> imprisonment and fine—the Court took care to explain why this was
> the case before making the adjustments it felt necessary.  This is
> precisely the type of individualized assessment that Gall demands, and

to which we must defer.  Accordingly, we will affirm the sentence that the District Court imposed.

Tomko, 562 F.3d at 575 (quoting Rita v. United States, 551 U.S. 338, 348-49 (2007)).  Here, the District Court adhered to this Court's directive and undertook nothing but an individualized assessment of the §3553(a) factors as applied to Stull (A19-205).  Compare id. with United States v. Carter, 564 F.3d 325, 329 (4th Cir. 2009) ("The district court's asserted 'reasons' could apply to any sentence, regardless of the offense, the defendant's personal background, or the defendant's criminal history."), and United States v. Estrada-Mederos, 784 F.3d 1086, 1093 (7th Cir. 2015) ("[T]he judge's terse explanation for Estrada–Mederos' sentence did not reflect an individualized assessment of the defendant . . . . the judge said only that Estrada–Mederos had committed other crimes and that this offense is a recidivist crime.  Those points provide no insight into the reasons for an individual sentence . . . because they apply to all such cases.").

Stull's specific contention of error due to the District Court's alleged placement of greater weight on one factor over the other relevant §3553(a) factors is incorrect, for no less than three equally availing reasons.  First, his argument of misappropriation of weight to specific §3553(a) factors "is a substantive complaint, not a procedural one."  United States v. Fountain, 792 F.3d 310, 323 (3d Cir. 2015) (quoting Merced, 603 F.3d at 217).  Second, Stull overlooks that while the District

Court did state that "first and foremost" it would consider the nature and circumstances of the offense (A200), this statement, when taken in context and within the fabric of the complete statement of reasons, denotes the starting point (a logical one at that, commencing with the first §3553(a) factor) of consideration of the full body of the relevant §3553(a) factors. See Rita, 551 U.S. at 359 (explaining the importance of "context and record" in determining whether district court considered arguments and evidence).

Third, Stull overlooks that proper application of the §3553(a) factors is a subtle exercise in weighing (a term that necessarily indicates an assignment of relative importance of components) the §3553(a) factors in an individualized manner, not a process with the goal of applying the §3553(a) factors to achieve parity or balance among or between them. This is because "the sentencing process involves an exercise in judgment, not a mathematical proof." United States v. Grossman, 513 F.3d 592, 596 (6th Cir. 2008); see also Gall, 552 U.S. at 47. Reasonable assignment of more weight to one §3553(a) factor, therefore, is the essence of an individualized sentence, not a manifestation of error. See United States v. Reibel, 688 F.3d 868, 872 (7th Cir. 2012) (Sentencing judges "have discretion over how much weight to give a particular factor. Although the weighting must fall within the bounds of reason, those bounds are wide.") (internal citations & quotations omitted). Indeed,

40

instead of error, the District Court in this case properly exercised its sentencing authority without placing inappropriate emphasis on Stull's offense, see United States v. Olhovsky, 562 F.3d 530, 551 (3d Cir. 2009) (reversing sentence where sentencing court placed too great an emphasis on the offense), or on Stull as a person, see Goff, 501 F.3d at 257 (reversing where sentencing court placed too great an emphasis on the offender).

### b. None Of Stull's Unpreserved Claims Of Procedural Error Amount To Plain Error.

Turning to Stull's unpreserved arguments, he maintains that the District Court failed to undertake an individualized assessment of him and his case (Br.21). As established above, however, this is the exact opposite of what occurred at Stull's sentencing and he cannot show error, plain or otherwise. The District Court considered the relevant §3553(a) factors and then pronounced a sentence that was custom-fit for Stull. See supra §I.D.2.a.

Stull next avers that the District Court committed procedural error by essentially abdicating its legal duty and obligation to formulate a proper federal sentence. According to Stull:

> . . . , the District Court yielded to the government's request to impose a sentence of 340 years imprisonment before credit for time already served–a sentence that mirrors the one imposed in state court, which the prosecutor requested as 'insurance' that should anything happen to

41

the state sentence, Mr. Stull 'would never see the light of day.' (App. 179-180).

(Br.16; see also Br.21).  This argument is not only factually inaccurate—Stull cobbles this contention together from various, disparate parts of the record—but it also is legally flawed.  Instead of renouncing its obligations, the District Court arrived at the sentence in a procedurally reasonable manner, as required.

The Government did not seek a term of 340 years; it sought a term of life imprisonment (A184-85).  The record reveals that, during the Government's argument, the District Court—not the prosecutor—raised the question of a 340 year term during discussion of Stull's state sentence (A184).  The District Court asked the prosecutor, "But do you think it's necessary to go the whole 340 years?" (A184).  The prosecutor replied, "absolutely. . . ." (A184-85).  Given that the District Court raised the 340 year term, only an unfair and incorrect reading of this passage would support Stull's contention that the Government sought a 340 year term.

This view is supported by the next exchange, in which the prosecutor specifically states the requested sentence—life imprisonment (A184-85).  In response, the District Court asked, "Does that concern you in any way in the mandate to impose a reasonable sentence?" and the prosecutor replied,

Your Honor, I believe a reasonable sentence is life imprisonment.  That is the guideline sentence in this case; it's not above the guideline sentence.

42

(A185). Taken in full context, and read objectively, the record therefore establishes that, as a matter of fact, the Government did not seek a sentence of 340 years. <u>See Rita</u>, 551 U.S. at 359 (noting importance of "context and record" in sentencing).

As the exchange between the District Court and the prosecutor continued (A186-90), it is obvious that the District Court properly questioned the prosecutor to probe the contours of a proper sentence, a step that shows independent thought, not rote adherence to the state-court's determination of a proper sentence. <u>Cf.</u> <u>United States v. Jones</u>, 740 F.3d 127, 144 (3d Cir. 2014) ("[T]hus, we cannot conclude that in simply asking defense counsel to support his argument for a variance, a court is improperly resuming the guidelines to be reasonable."). Discussion of Stull's state sentence was proper:  the District Court considered the state sentence, but did not focus on state sentencing practices to the exclusion of basic federal sentencing principles.  <u>See</u> <u>United States v. Jackson</u>, 862 F.3d 365, 391 (3d Cir. 2017).  The record therefore demonstrates that District Court simply did not abandon its responsibilities or power in arriving at Stull's procedurally proper sentence. <u>See Levinson</u>, 543 F.3d at 195.

The actual record, therefore, contains none of the passivity by the District Court about which Stull now complains.  He, therefore, has failed to show any error, plain or otherwise, nor has he shown prejudice from any such plain error.  <u>See</u>

43

Dominguez Benitez, 542 U.S. at 81-82 (on plain error, party must prove there is a reasonable probability that, but for the error, a different result would have occurred).

Stull pivots to his unpreserved contention that the District Court violated U.S.S.G. §5G1.2(d) (Br.22-23; Br.28). This provision provides:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.

U.S.S.G. §5G1.2(d). Although unclear, Stull's position seems to be that this provision requires "a sentence selected from within the guideline sentencing range"—here, life imprisonment, but that the District Court did not comply because it articulated the sentence in terms of years (Br.23 (citation omitted)). But, rather than error in its application of §5G1.2(d), the District Court properly applied the Guideline, and committed no error, plain or otherwise. See United States v. Christie, 624 F.3d 558, 574-75 (3d Cir. 2010) (affirming 90-year sentence for possession, receipt, and advertising of child pornography where Guidelines Range was life and court imposed a life sentence consisting of the statutory minimum sentence of 15 years applied consecutively on counts 1 to 6, a mandatory minimum term of 5 years on count 7, and 5 years on count 8 to be served concurrently); United States v. Jenkins, 333 F.3d 151, 155 (3d Cir. 2003) ("[W]hen [the] statutory maximum

sentence on [the] count of conviction with highest maximum is inadequate to achieve total Guidelines sentence, 'the sentence imposed on one or more of the other counts shall run consecutively . . . to the extent necessary to produce a combined sentence equal to the total punishment.'" (quoting U.S.S.G. §5G1.2(d))); United States v. Colson, 214 F. App'x 227, 229 (3d Cir. 2007).[8]

None of the offenses of which Stull was convicted "carries a life sentence, so he could not have been formally sentenced to life." United States v. Lewis, 594 F.3d 1270(10th Cir. 2010). In such an instance §5G1.2 allows a "district court to impose a sentence functionally equivalent to life imprisonment by imposing the maximum sentence for each crime of which [Stull] was convicted and making the sentences consecutive." Id. at 1275-76 (citing Sarras, 575 F.3d at 1208–09 ("Because the statutory maximum [for the count with the highest statutory maximum] was less than the total guidelines punishment of life imprisonment, §5G1.2(d) of the guidelines called for the sentences for multiple counts to run consecutively as the advisory guidelines sentence.")); United States v. Thompson, 523 F.3d 806, 814 (7th Cir.

---

[8] Stull's claim of reversible procedural error also fails because §5G1.2 is no longer mandatory in light of Booker, 543 U.S. 220. See United States v. Hollis, 552 F.3d 1191, 1195 (10th Cir. 2009) (citing United States v. Eversole, 487 F.3d 1024, 1033 (6th Cir. 2007)); United States v. Ronquillo, 508 F.3d 744, 750-51 (5th Cir. 2007); United States v. Kurti, 427 F.3d 159, 164 (2d Cir. 2005), and Stull has shown no error, plain or otherwise, in its application.

2008) ("The district court thought a life sentence was warranted, and it did not err when it imposed consecutive maximum sentences on each count of conviction to reach an equivalent sentence."); United States v. Herrick, 512 F. App'x 534, 539 (6th Cir. 2013) ("Section 5G1.2(d) permits the court to impose consecutive sentences where the statutory maximum is less than the total punishment, in this case life in prison."); United States v. Howells, 676 F. App'x 55, 57-58 (2d Cir. 2017) (Section 5G1.2(d) applies to sentences to run "consecutively to effect a total punishment of life imprisonment."); U.S.S.G. §5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").    The directives of §5G1.2(d) hold true, even though the ultimate sentence may exceed the statutory maximum sentence for any count of which the defendant was convicted.  See U.S.S.G. §5G1.2(d); United States v. Craig, 703 F.3d 1001, 1002 (7th Cir. 2012).

As this demonstrates, even though the District Court ultimately articulated Stull's sentence in terms of years, the sentence is functionally one of life imprisonment (A113-14 (announcing Guidelines Range of life); Statement of Reasons p.2 (indicating sentence was within the Guidelines Range (sealed)).  See e.g., United States v. Betcher, 534 F.3d 820, 827-28 (8th Cir. 2008) (Defendant's

46

sentence of 750 years "for practical purposes—is a life sentence, and that his how we view it."). For this reason, the District Court complied with §5G1.2(d).

Apart from proper application of §5G1.2(d), the District Court had the statutory authority to impose consecutive sentences in the exercise of its discretion. See 18 U.S.C. §3584(a) ("If multiple terms of imprisonment are imposed on a defendant at the same time . . . , the terms may run concurrently or consecutively . . . ."). Stull does not recognize the District Court's power in this respect, nor does he squarely challenge the District Court's exercise of its discretion in imposing consecutive sentences. Even if he had, there can be no doubt that the District Court properly exercised its discretion here given the totality of the circumstances.

Turning to Stull's next claim of procedural error, it is true that the District Court did not respond explicitly to Stull's request for a term of 20 years of incarceration (the maximum sentence for one count of distribution or possession of child pornography) or a sentence of 30 years (the maximum sentence for one count of production of child pornography), nor did the District Court explain why such a sentence would not be sufficient, but not greater than necessary (Br.21; Br.26).[9] But,

---

[9] The record reflects that Stull never argued for a sentence of 30 years and thus that the argument fails for this additional reason of waiver. See Joseph, 730 F.3d at 340-42.

the unpreserved argument that this amounted to error, much less plain error, is misplaced.

Preliminarily, Stull overlooks that §3553(a) does not contain such an "explicit" explanation requirement. See United States v. Quiles, 618 F.3d 383, 397 (3d Cir. 2010). This is particularly true where, as here, the District Court has provided a sufficient explanation for the sentence. See id.

Secondarily, a district court is not required to respond to a mitigation argument unless it has "colorable legal merit and a factual basis." United States v. Ausburn, 502 F.3d 313, 329 (3d Cir. 2007). Stull's argument for a 20 year sentence had neither, as evidenced by his present failure to identify any support in the record or in case authority to demonstrate why a 20-year sentence or a 30-year sentence "so far below the life term recommended by the Guidelines, could be thought of as reasonable in this case." United States v. Russell, 662 F.3d 831, 854 (7th Cir. 2011) (affirming 456 month sentence for defendant's production of child pornography depicting his minor daughters). Instead, the totality of the circumstances establish that, unlike a run-of-the-mill child exploitation case, Stull's case is extraordinary and a 20 or 30 year term of incarceration would not have been a substantively reasonable sentence.

48

Finally, the record provides "some indication" that the District Court did consider Stull's request for much shorter sentence, sufficiently enough to avoid reversible procedural error on plain error review.  See Merced, 603 F.3d at 224 (citing Cooper, 437 F.3d at 329)).   The District Court identified Stull's case as the worst she had ever seen:  this reflects consideration (and proper rejection) of Stull's counter argument that he should be sentenced as if his was a mine run case.  The District Court, therefore, did not ignore defense counsel's argument to such an extent to amount to plain error.  See Cooper, 437 F.3d at 329 (sentencing court need not discuss and make findings as to each of the §3553(a) factors if the record makes clear the court took the factors into account at sentencing); Ausburn, 502 F.3d at 328 ("Of course, while the record must be adequate for review, it need not be perfect.").

Stull also argues, in his final unpreserved contention of procedural error, that his sentence is flawed because the District Court failed to say enough to justify his long sentence (Br.26).  This claim lacks merit, though:  as the Supreme Court has made clear, the length of the statement of reasons is left "to the judge's own professional judgment" because "[s]ometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation."  Rita, 551 U.S. at 356-57.  What is necessary is that the sentencing court "set forth enough to satisfy the appellate court that [the court] has considered the parties' arguments and has a

reasoned basis for exercising [its] own legal decision-making authority.  Id. at 356. On the instant record, and in light of the heinous nature of Stull's conduct, his relationship to Minor A, and the type of child pornography he produced—there is no doubt that the District Court  provided an adequate statement of reasons.  See id. Indeed, Stull does not argue otherwise.  In sum, Stull can show no error, plain or otherwise, in this aspect of his sentence.

### E.  Stull's Claim Of Substantive Unreasonableness Is Meritless.

The bulk of Stull's appeal is focused on his claim that his sentence is substantively unreasonable.  There can be no doubt that Stull received a severe, but wholly appropriate and legal, sentence because his case is far beyond the run-of-the mill case of production and possession of child pornography.  Any reasonable court would have imposed the same sentences for the reasons given by the District Court. See e.g., Betcher, 534 F.3d at 827-28 (affirming sentence of 750 years following conviction on 24 counts of production and 1 count of possession of child pornography, all involving defendant's adopted grandchildren); Howells, 676 F. App'x at 57-58 (affirming 580 year sentence for kidnapping, drugging, and sexually assaulting 6 young girls ranging from ages 5 to 11, and recording the assaults (and citing cases with similar sentences); United States v. Metzger, 411 F. App'x 1, 3-4 (7th Cir. 2010) (affirming sentence of 235 years where defendant produced and

50

possessed child pornography of children of friends and family) (and citing cases affirming similar sentences); United States v. Falgout, 325 F. App'x 775, 777-78 (11th Cir. 2009) (affirming 11,520–month sentence for production of child pornography); United States v. Cowan, No. 11-15989, 2012 WL 5834582, at *4-11 (11th Cir. Nov. 19, 2012) (affirming 1,680 month sentence for three counts of sexual exploitation of a minor through the receipt of child pornography, including relevant conduct of rape of some of the minors); United States v. Graziotti, 619 F. App'x 980, 981 (11th Cir. 2015) (affirming sentence of 210 years for sexually exploiting minor, production and distribution of child pornography, and where defendant used his position as elementary school teacher, summer camp director and youth pastor to gain access to children) (and citing cases affirming similar sentences); United States v. Johnson, 451 F.3d 1239, 1244 (11th Cir. 2006) (affirming 140–year sentence for offender with prior offenses who produced, possessed, and distributed child pornography); Sarras, 575 F.3d at 1220 (affirming a 100–year sentence for a first-time offender who sexually abused a thirteen-year-old girl and took photos of it); United States v. Stong, 773 F.3d 920, 926 (8th Cir. 2014) (affirming sentence of 110 years for sexual exploitation of a minor and child pornography offenses) (and citing cases affirming similar sentences); United States v. Demeyer, 665 F.3d 1374, 1348 (8th Cir. 2012) (affirming four consecutive 30-year prison terms for

defendant's sexual exploitation of his developmentally-disabled teenage daughter, which he also videotaped and shared over the Internet) (*per curiam*); United States v. Brown, 843 F.3d 74, 82-83 (2d Cir. 2016) (affirming 720-month sentence for production of child pornography and possession of child pornography where defendant repeatedly had actual sexual contact with multiple young victims), cert. denied, 138 S. Ct. 708 (2018). Stull's focus on the number of years articulated by the District Court is misplaced: the reality is that he received a sentence within the Guidelines Range (Statement of Reasons p.2. (indicating Guidelines Range sentence, with no variance or departure (sealed)). See e.g., Betcher, 534 F.3d at 827 (viewing sentence of 750 years "for practical purposes" as "a life sentence"); Russell, 662 F.3d at 853 (explaining that sentence of 456 months "is in actuarial terms, a life sentence").

Stull's arguments for reversal lack merit on their own and, more fundamentally, fail to demonstrate that, given the totality of the circumstances and deference owed to the District Court, his sentence is substantively unreasonable.[10]

---

[10] To the extent that Stull is found to have carried his burden to show any substantive error requiring vacatur of his sentence and remand for resentencing, any such remand would not be required because it "would be an idle and useless formality." Yuan v. Att'y Gen., 642 F.3d 420, 427 (3d Cir. 2011) (internal quotation marks & citation omitted). This is because the District Court would simply articulate a sentence of life imprisonment for the same reasons given at the sentencing hearing. See also Howells, 676 F. App'x at 58 (Where total punishment is "life imprisonment,

He contends that "his conduct, no matter how reprehensible, does not merit a sentence that is thousands of months—and hundreds of years—longer than the sentences routine imposed on murderers" (Br.26 (and citing cases); see Br.24 (arguing that his sentence is greater than necessary)).  Stull continues that "he did not commit murder" and "for the victim of even a very serious nonhomicide crime, life is not over and normally is not beyond repair" (Br.28).  This is precisely the situation Minor A is in, as Stull sees it:  she is alive and her life is repaired as evidenced by the family's testimony that Minor A is "doing amazing on her own" and "has a bright future" (Br.28).

Stull's effort at discounting his offense conduct and the injuries to which he subjected Minor A is not at all compelling.  Stull's argument that offenses be scaled for sentencing purposes from worst to least completely contradicts the law, not to mention his own complaint on appeal that he was denied an individualized sentence.  See supra §I.D.2.b.  Neither §3553(a) nor the Guidelines rank offenses by severity; likewise, neither renders the severity of the offense as the singular driver of a sentence.  Instead, as the §3553(a) factors makes clear and as the District Court fully understood, sentencing turns on a complete assessment of the person, which is the

---

a term of years longer than his life is harmless because no defendant can be incarcerated beyond his lifetime" and record "left no doubt that the district court did not think anything less than a life sentence was adequate to satisfy §3553(a).").

exact treatment Stull received from the District Court (A199-205).  And, Stull's foray into depreciating his offense conduct and the life-long injury he caused to his own child is one that he should have been reticent to engage, if for no other reason than it exposes his failure to appreciate the seriousness of his offense.  See Goff, 501 F.3d at 258-29.

Apart from this, Stull's premise that the harshest sentences should be reserved for murderers is simply wrong.  Instead, the most severe sentences should be reserved for cases just like Stull's:  on the totality of the circumstances, cases that lie well beyond the boundaries of the routine (A200), regardless of the statute violated.  See United States v. Okun, 453 F. App'x 364, 373-74 (4th Cir. 2011) (affirming 120 year sentence for mail and wire fraud, money laundering, bulk cash smuggling, and conspiracy).

Stull's contention that his sentence is substantively flawed because it is impossible to serve as a stand-alone matter (Br.24-25), and particularly impossible for him to serve because of his age and health problems (Br.24-25) is equally specious.  "The mere fact that a defendant may not survive beyond his sentence does not provide a basis for a shorter sentence."  United States v. Watson, 482 F.3d 269, 273 (3d Cir. 2007); United States v. Ward, 732 F.3d 175, 186 (3d Cir. 2013).  What does provide a proper basis for Stull's sentence is the "egregious nature" of his

54

offense and the "danger he posed to children[,]" including his own daughter. <u>United States v. Coates</u>, 462 F. App'x 199 (3d Cir. 2012) (and affirming 300-month sentence for production of child pornography, including depictions of defendant's 2-year old daughter performing oral sex on him).

Stull also argues that the District Court imposed the sentence it did only as a concession to the Government's call for "insurance" that Stull would "never see[] the light of day" and that this somehow amounts to error (Br.28). Of course, argument of the need to protect the public from the defendant is specifically allowed by §3553(a)(2)(c), as is a sentencing court's consideration of this factor. <u>See</u> <u>Metzger</u>, 411 F. App'x at 4 (affirming 235 year sentence and citing with approval district court's intent that defendant live out his life in prison). But, beyond the fact that the prosecutor made this argument, Stull offers nothing to establish that this specific argument unduly factored into the sentence imposed. <u>See e.g.</u>, <u>United States v. Curran</u>, 638 F. App'x 149, 154 (3d Cir. 1994) (affirming 70-year sentence for possession, distribution, and production of child pornography and citing with approval district court's statement that defendant must be removed from society and the community), <u>cert. denied</u>, 137 S. Ct. 180 (2016).

Stull's averment that the District Court placed undue weight on the nature and circumstances of his offense is likewise without merit. <u>See</u> <u>supra</u> §I.D.2.a. Review

of the record, complete and in context, establishes that the District Court undertook an individualized assessment to arrive at a sentence that that is appropriate, rests on reasons that are logical and consistent with §3553(a) factors, and is fully supported by the record.  See Tomko, 562 F.3d at 571-72.

At bottom, Stull's complaint is fairly viewed as disagreement with the weight the District Court placed on certain factors, rather than placing greater weight on the mitigation arguments he made.  But, this does not mean that those factors were not considered and done so appropriately.  See United States v. Bungar, 478 F.3d 540, 546 (3d Cir. 2007).

None of Stull's arguments, therefore, lead to reversal of his sentence on grounds of substantive unreasonableness.  This conclusion follows for the reasons set forth above and is supported by the firm and consistent principles of this Court's sentencing jurisprudence which mandate deference to a district court's determination that the §3553(a) factors, on the whole, justify the sentence.  See Tomko, 562 F.3d at 568.  Affirmance also obtains even if the Court "might reasonably have concluded that a different sentence was appropriate[.]"  Id. at 560 (citation omitted).  Indeed, "an estimation of the outer bounds of what is 'reasonable' under a given set of circumstances may not always be beyond debate, but the abuse-of-discretion standard by which that estimation must be judged limits the debate and

gives district courts broad latitude in sentencing." <u>Levinson</u>, 543 F.3d at 195.   The

"absurdity of a [338] year sentence, or even a 10,000 year sentence, should not

detract from the gravity of [Stull's] crimes." <u>Betcher</u>, 534 F.3d at 828.  The Court,

therefore, should affirm Stull's sentence as substantively reasonable.

## <u>CONCLUSION</u>

For all of these reasons, the Court should affirm the judgment of the District

Court.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

By:    <u>/s/ Laura Schleich Irwin</u>
Laura Schleich Irwin
Assistant U.S. Attorney

Date:  September 25, 2018

<u>**CERTIFICATE OF COMPLIANCE**</u>

I hereby certify that I am an Assistant United States Attorney for the Western District of Pennsylvania, that I am filing the attached Brief for Appellee United States of America, and:

(1)    this Brief complies with the length limitations of Fed. R. App. P. 32(a)(7) because this Brief contains **12884** words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and thus does not exceed the 13,000-word limit;

(2)    this Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because it has been prepared using a Microsoft WORD 2010 word-processing system and it is in a proportionally-spaced typeface, namely Times New Roman, that is at least 14 points;

(3)    the text of the electronic PDF Brief is identical to the text of the paper copies of the Brief and Appendix; and

(4)    the electronic PDF Brief has been prepared on a computer that is automatically protected by a virus detection program, namely a continuously-updated version of McAfee EndPoint Security, and no virus was detected.

/s/ Laura Schleich Irwin
Laura Schleich Irwin
Assistant U.S. Attorney

Dated:  September 25, 2018

## **CERTIFICATION OF FILING AND SERVICE**

I hereby certify that on September 25, 2018, I caused the Brief for Appellee United States of America to be filed with the Clerk of this Court by (a) electronic filing in the PDF form using the Circuit's electronic filing system, and (b) paper filing of an original and six paper copies using postage-prepaid first-class mail.

I also certify that on September 25, 2018, I caused the Brief to be served:

[X] by the Notice of Docketing Activity generated by the Third Circuit's electronic filing system.

[X] by service of one paper copy by postage-prepaid first-class mail, on:

Kimberly R. Brunson
Assistant Federal Public Defender
1500 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222
*Counsel to Appellant*

/s/ Laura Schleich Irwin
Laura Schleich Irwin
Assistant U.S. Attorney

Dated:  September 25, 2018